# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# NORTHERN DIVISION

**JENNIFER BRINKMAN**                                                                **PLAINTIFF**

**v.**                                                            **CIVIL ACTION NO. 3:22-cv-586-KHJ-MTP**

**NEEL-SCHAFFER, INC., et al.**                                                   **DEFENDANTS**

## REPORT AND RECOMMENDATION

THIS MATTER is before the Court on Defendants Neel-Schaffer, Inc., and Dennis Reeves's Joint Motion to Enforce Settlement [73]. Having conducted a hearing on the Motion [73] and having carefully considered the parties' submissions and the applicable law, the undersigned recommends that the Joint Motion to Enforce Settlement [73] be GRANTED and that the Court hold the demand for sanctions in abeyance to allow Plaintiff a final opportunity to complete the settlement as agreed.

## BACKGROUND

On December 19, 2023, Plaintiff Jennifer Brinkman and Defendants Neel-Schaffer, Inc., and Dennis Reeves agreed to settle all claims in this matter during a settlement conference before the undersigned. *See* Minute Entry 12/19/2023. Counsel for all parties, including Plaintiff's former counsel,[1] were present during the settlement conference and actively negotiated the terms of a settlement. The terms agreed to by the parties were memorialized on a "settlement term sheet," which was then executed by Plaintiff and counsel for all parties. *See* [79].

---

[1] On February 28, 2024, Plaintiff's former counsel filed a Motion to Withdraw as Attorney [63]. Plaintiff responded on March 4, 2024, stating no objection to the Motion [63] as she "terminated [former counsel]" on February 25, 2024. *See* [64] at 3. The Court granted the Motion to Withdraw as Attorney [63] on March 4, 2024. *See* Order [65]. Plaintiff has proceeded *pro se* since that time.

1

Because Plaintiff has a pending bankruptcy action in the United States Bankruptcy Court for the Southern District of Alabama,[2] one of the terms agreed to by the parties stated that the disbursement of the settlement funds would be subject to the bankruptcy court's approval and that Plaintiff would "obtain the necessary approval of the bankruptcy court." [79] at 1.

On February 24, 2024, Plaintiff filed a "Motion to Approve Compromise/Settlement" in the bankruptcy court. *See In re Brinkman*, 1:23-bk-11658, (Bankr. S.D. Al.) [61]. Plaintiff withdrew that motion on April 10, 2024. *Id.* [73]. The undersigned held a telephonic conference with the parties the following day to inquire as to Plaintiff's delay in obtaining the bankruptcy court's approval. Plaintiff withdrew her "Motion to Approve Compromise/Settlement" in the bankruptcy court because she apparently disputed the amount of the fee owed to her former counsel.[3] *See* Order [68]; *see generally* [64-3].

On April 15, 2024, the undersigned entered an Order [68] directing Plaintiff to file a written statement with the Court regarding her intent either to proceed with the approval of the disbursement of the funds in the bankruptcy court or to challenge the pending settlement agreement in this Court. [68] at 2. Plaintiff timely submitted a non-committal response to the Court's Order [68], explaining that she "cannot state her intent to proceed with the approval of the disbursement of the settlement funds" in the bankruptcy court nor could she state her intent to

---

[2] *See In re Brinkman*, 1:23-bk-11658 (Bankr. S.D. Al.).

[3] The Court is not privy to any contract or other terms of engagement between Plaintiff and her former counsel. However, one of the terms of settlement (agreed to by Plaintiff) stated that each party was responsible for its own attorneys' fees and costs. *See* [79].

challenge the pending settlement agreement. [70] at 3. To date, Plaintiff has not obtained the bankruptcy court's approval.[4]

Aggrieved, Defendants Neel-Schaffer, Inc., and Dennis Reeves filed the Instant Motion to Enforce Settlement [73]. The Motion [73] is now fully briefed, and all parties were heard during a hearing before the undersigned on June 25, 2024. This matter is now ripe for review.

## ANALYSIS

A district court has "inherent power to recognize, encourage, and when necessary, enforce parties' settlement agreements." *Wise v. Wilkie*, 955 F.3d 430, 434 (5th Cir. 2020) (internal quotations and citation omitted). The interpretation and validity of a settlement agreement regarding Title VII claims is governed by federal law. *See Quesada v. Napolitano*, 701 F.3d 1080, 1083 (5th Cir. 2012).

An agreement to settle a Title VII claim must be "knowing and voluntary." *Smith v. Amedisys, Inc.*, 298 F.3d 434, 441 (5th Cir. 2002). "One who attacks [such] a settlement must bear the burden of showing that the contract he has made is tainted with invalidity." *Mid-South Towing Co. v. Har-Win, Inc.*, 733 F.2d 386, 392 (5th Cir. 1984). "[W]hen opposition to enforcement of the settlement is based not on the merits of the claim but on a challenge to the validity of the agreement itself, the parties must be allowed an evidentiary hearing on disputed issues of the validity." *Wise*, 955 F.3d at 439.

In her Response [80] [81], Plaintiff offered the following objections against the validity of the settlement agreement:

---

[4] Plaintiff has made no further effort seeking such approval other than filing her initial motion on February 24, 2024, that she later withdrew on April 10, 2024. *See In re Brinkman*, 1:23-bk-11658, [61] [73].

3

- Plaintiff disputed her participation in settlement discussions and the settlement conference, notwithstanding Plaintiff's signature on the settlement term sheet dated December 19, 2023. [80] at 1.
- Plaintiff claims that there was a lack of understanding regarding the terms and implications of the agreement at the time of execution and that she was unaware of the detailed nature of the settlement agreement's final release of claims. *Id.*
- Plaintiff argues that the settlement term sheet was not a binding document "but rather serve[d] as a basis for drafting a more detailed and final agreement." [81] at 5.
- Plaintiff complains that, because her former counsel actively participated in negotiations on her behalf, she was not directly involved in the detailed settlement discussions and that her reliance on counsel "undermines the claim that Plaintiff had full knowledge of and agreed to the settlement." *Id.* at 5-6.
- She was confined in a windowless room, deprived of access to a clock and phone, and lacked both sustenance and water during the settlement conference. *Id.* at 6.
- A mere signature by the Defendants' counsel does not suffice as confirmation that Defendants reviewed, understood, and agreed to the terms of settlement. *Id.* at 7.
- Former Defendant Neel-Schaffer Engineers and Planners, Inc., and Defendant Reeves were absent during the settlement conference, violating the Court's requirement that individuals with full settlement authority be present. *Id.* at 8.
- She claims that the lack of negotiation prior to the conference and Defendants' claim that negotiations were conducted "at arm's length" "serves as compelling evidence that [Defendants] abused the settlement conference." *Id.* at 10.
- She was unaware of the opportunity to present her case during the settlement conference, and her former counsel did not present a brief presentation to the magistrate judge at the settlement conference. *Id.*

Considering Plaintiff's myriad objections raised in her filings, the undersigned conducted a hearing to allow the parties to put forth evidence as to the validity of the settlement agreement. Additionally, the undersigned sought to clarify whether any impediments prevented the implementation of the parties' settlement agreement.

**The Hearing**

On June 25, 2024, Plaintiff, her former counsel, and counsel for Defendants participated in a hearing before the undersigned. Defendants offered evidence that the parties executed the settlement term sheet during the December 19, 2023, settlement conference. Defendants tendered the executed settlement term sheet into evidence with no objection from Plaintiff. *See* [79]. Plaintiff admitted that she signed the settlement term sheet and did not argue against its

4

validity. Plaintiff instead identified several concerns regarding Defendants' proposed Settlement Agreement and Full and Final Release of Claims, *see* [79-2], which she has not yet signed.

Plaintiff explained that her main concerns preventing the resolution of this matter stemmed from the language provided in Defendants' proposed Settlement Agreement and Full and Final Release of Claims—not the parties' executed settlement term sheet. Plaintiff apparently declined to execute Defendants' final release without the inclusion of certain amendments, such as: (1) a mutual release; (2) a neutral reference; and (3) a restriction of Plaintiff's case files from public access.

Seeking clarification, the undersigned asked Plaintiff whether she agreed that these three issues were her *only* concerns preventing resolution of this dispute; Plaintiff agreed. Plaintiff therefore abandoned the objections raised in her Response [80] [81] to the Motion to Enforce Settlement [73]. Even if she had not, Plaintiff's abandoned objections are without merit. Notwithstanding, the undersigned takes into consideration Plaintiff's *pro se* status and will address some of her arguments that, liberally construed, question the validity of the settlement term sheet.

First, Plaintiff argues that there was a "lack of understanding" regarding the terms and implications of the settlement term sheet at the time of execution. [80] at 1. This assertion is belied by Plaintiff's signature on the settlement term sheet. "A party that signs a written agreement is presumed to know its contents and cannot avoid obligations by contending that he did not read it, understand it, or that the other party failed to explain it, unless fraud or duress occurred." *Glaser v. Compass Bank, N.A.*, 2010 WL 11553124, at *3 (E.D. Tex. July 14, 2010). Plaintiff did not elaborate at the hearing regarding any terms that were not understood. In fact, the settlement agreement included certain provisions that she demanded. *See, e.g.*, [79] at 2, ¶ 8.

Second, Plaintiff argues that she was under duress when she signed the settlement term sheet because she was "confined" in a windowless room, deprived of access to a clock and phone, and lacked both sustenance and water during the settlement conference.[5] [81] at 6. Plaintiff did not claim duress or coercion during either the settlement conference or the Motion [73] hearing. Elsewhere, however, Plaintiff admitted that she agreed to settle "because [she] was over the day and tired of arguing," and "because [she] did not stand a chance of going to trial."[6] [64-3] at 3. Plaintiff has not established that she was under duress or coerced to sign the settlement term sheet during the December 19, 2023, settlement conference.

Plaintiff additionally protests former Defendant Neel-Schaffer Engineers and Planners, Inc., and Defendant Reeves's absences from the settlement conference. Plaintiff argues that their absences violated the Court's requirement that individuals with full settlement authority be present. [81] at 8. Notably, Plaintiff and her former counsel did not complain of these Defendants' absences at any time throughout the settlement conference.

---

[5] In support of her argument for coercion and duress, Plaintiff cites "*Southern California Edison v. Peabody Western Coal Co.*, 383 F.3d 1340 (9th Cir. 2004)" and "*Ford v. Keiko*, 400 U.S. 914 (Supreme Court, 1991)." Neither cite exists as written by Plaintiff. The Court did find *S. Cal. Edison v. Peabody W. Coal Co.*, 977 P.2d 769 (Ariz. 1999), a case readily distinguishable from this one. There, the Supreme Court of Arizona considered the enforceability of an arbitration agreement—having never discussed coercion or duress. Unable to locate the citations provided by Plaintiff, the undersigned disregards these "cases."

[6] Both admissions were divulged by Plaintiff in her Response to Motion to Withdraw as Counsel [64]. The attachments to the Response [64] include emails from Plaintiff to her former counsel. To the extent that these conversations were held in confidence subject to the attorney-client privilege, the privilege is now waived as the "disclosure of any significant portion of a confidential communication waives the privilege as to the whole." *United States v. Davis*, 636 F.2d 1028, 1043 n.18 (5th Cir. 1981). The "need to cloak these communications with secrecy … ends when the secrets pass through the client's lip to others." *U.S. v. El Paso Co.*, 682 F.2d 530, 539 (5th Cir. 1982).

Defendant Neel-Schaffer Engineers and Planners, Inc., did not have a representative present as it was dismissed from this matter on October 12, 2022. *See* Agreed Order of Dismissal [3]. As to Defendant Reeves's absence,[7] his attorney signed the settlement term sheet on his behalf. An attorney of record is presumed to have authority to enter into a settlement agreement for his or her client. *See Quesada*, 701 F.3d at 1083. The party seeking to vacate the settlement has the burden of proof proving that the "attorney had no right to consent to its entry." *Id*. Plaintiff has not offered any proof that counsel for Defendant Reeves lacked the authority to settle on his behalf, nor has Reeves challenged the agreement.

Plaintiff also complains that she was unaware of the "detailed nature of the settlement agreement's final release of claims," and that the settlement term sheet was not a binding document "but rather serve[d] as a basis for drafting a more detailed and final agreement." [81] at 5. However, courts in the Fifth Circuit routinely recognize the binding nature of settlement term sheets, even when more formal documents are expected to be provided later. *See, e.g., Doskocil Mfg. Co., Inc., v. Make Ideas, LLC*, 2024 WL 42313 (N.D. Tex. Jan. 2, 2024); *Goodman v. Smart Modular Techs., Inc*., 2016 WL 4435436 (S.D. Tex. Aug. 23, 2016).

Moreover, "[i]f a party to a Title VII suit who has previously authorized a settlement changes his mind when presented with the settlement documents, that party remains bound by the terms of the agreement." *Fulgence v. J. Ray McDermott & Co*., 662 F.2d 1207, 1209 (5th Cir. 1981) (internal citations omitted). Plaintiff's grievances regarding Defendants' proposed Settlement Agreement and Full and Final Release of Claims cannot void the terms agreed to by the parties in the executed settlement term sheet.

---

[7] His attorney and an insurance representative negotiated on his behalf.

Finally, though not addressed by Plaintiff or Defendants, the undersigned notes that Plaintiff's bankruptcy action has no bearing on the validity of the executed settlement term sheet since a Chapter 13 debtor may sue and be sued, and the Chapter 13 debtor controls whether and on what terms to settle his or her lawsuit. *See In re James*, 210 B.R. 276, 278 (Bankr. S.D. Miss. 1997); *see also Slater v. United States Steel Corp.*, 871 F.3d 1174, 1180 (11th Cir. 2017) ("[A] chapter 13 debtor may continue to control the lawsuit and the terms of any settlement.").

Plaintiff has not established that the settlement term sheet is tainted with invalidity or is otherwise unenforceable.

**The Settlement Term Sheet**

Having considered Plaintiff's arguments against the validity of the settlement term sheet, the undersigned now addresses whether the settlement term sheet is an enforceable contract. A settlement agreement is a contract under federal law. *See Guidry v. Halliburton Geophysical Servs., Inc.*, 976 F.2d 938, 940 (5th Cir. 1992). The federal law of contracts "uses the core principles of the common law of contracts that are in force in most states." *Smith v. United States*, 328 F.3d 760, 767 n. 8 (5th Cir. 2003) (per curiam).

A contract requires an offer, acceptance, and a meeting of the minds on all essential terms. *See Ibe v. Jones*, 836 F.3d 516, 524 (5th Cir. 2016). Acceptance of an offer occurs when there is "manifestation of assent that occurs in any reasonable manner." *Chen v. Highland Cap. Mgmt., L.P.*, 2012 WL 5935602, *2 (N.D. Tex. Nov. 27, 2012). A meeting of the minds on all essential terms of a settlement agreement is generally present "where the parties have agreed upon the monetary amount of the settlement payment and the fact that plaintiffs will release specific claims." *In re Deepwater Horizon*, 786 F.3d 344, 357 n. 26 (5th Cir. 2015).

During the settlement conference, all parties participated through counsel in drafting the language set forth in the executed settlement term sheet. Defendants offered a lump-sum payment in exchange for Plaintiff's release of all claims against them.[8] Plaintiff signed the agreement, which was approved by her former lawyer who attended the settlement conference with her. This agreement, as memorialized in the executed settlement term sheet, constitutes a meeting of the minds between the parties on all essential terms. *See In re Deepwater Horizon*, 786 F.3d at 357 n. 26.

Neither side reserved any issue for further discussion or negotiation beyond the terms that were agreed to in the settlement term sheet. Specifically, the parties did not negotiate for a mutual release or a neutral reference, and Plaintiff did not seek to include any term purporting to restrict the public's access from her case files.[9] Plaintiff's present demands for these amendments have no bearing on the validity of the parties' previously-executed settlement term sheet, and there is simply no basis upon which the Court may re-write the parties' agreement.[10]

---

[8] The settlement term sheet reflected other terms that the parties negotiated as well, some of which were demanded by Plaintiff. *See, e.g.*, [79] at 2, ¶ 8.

[9] During the June 25, 2024, hearing, the parties were allowed an opportunity to discuss the three additional terms Plaintiff sought to include in Defendants' proposed Settlement Agreement and Full and Final Release of Claims. No agreement was reached. At the conclusion of the hearing, the parties were urged to resolve this manner independent of the Court. Having received no further information to the contrary, the parties apparently remain at a standstill over Plaintiff's demand that the additional terms be included as part of the settlement.

[10] Even if the parties had negotiated some effort to restrict the public's access to Plaintiff's case files, the Court is bound by governing law on this issue, not the parties' settlement agreement. It is a well-established presumption that the public has a "general right to inspect … judicial records and documents." *Nixon v. Warner Commc'n, Inc.*, 435 U.S. 589, 597 (1978). "The public's right of access to judicial records is fundamental." *Binh Hoa Le v. Exeter Fin. Corp.*, 990 F.3d 410, 418 (5th Cir. 2021). Honoring the spirit of the law, the Local Rules of this Court recognize that "all pleadings and other materials filed with the court ('court records') become a part of the public record of the court." L.U. Civ. R. 79(a). However, a party may move to restrict documents from public access under certain circumstances upon a proper showing that

After careful consideration, the undersigned finds that there was a knowing and voluntary agreement by Plaintiff when she agreed to dismiss her claims with prejudice against Defendants for a lump-sum payment as set forth in the settlement term sheet. Plaintiff has not demonstrated that the agreement is invalid, and the undersigned finds that the executed settlement term sheet is enforceable. Accordingly, the settlement should be enforced, and Plaintiff should execute a final release of all claims against Defendants forthwith.

**Sanctions**

Defendants have requested that the Court impose any sanctions that it deems just and proper. During the June 25, 2024, hearing, Defendants clarified that they were seeking their attorneys' fees incurred in filing the Motion [73].[11] Under the circumstances, the undersigned does not recommend an award of attorneys' fees to Defendants at this time. However, if Plaintiff fails to comply with an order of the Court concerning the enforcement of the parties' settlement agreement or fails to follow through with the settlement as may be directed, an award of attorneys' fees and/or other sanctions would be appropriate at that time.

## RECOMMENDATION

For the reasons set forth above, the undersigned recommends that:

1. Defendants Neel-Schaffer, Inc., and Dennis Reeves's Joint Motion to Enforce Settlement [73] be GRANTED;

2. Plaintiff's claims against Defendants Neel Schaffer, Inc., and Dennis Reeves be dismissed with prejudice as agreed;

---

"sealing is supported by clear and convincing reasons and is narrowly tailored to serve those reasons." L.U. Civ. R. 79(b). Plaintiff has not moved to restrict any document from public access, much less complied with L.U. Civ. R 79(b).

[11] During the June 25, 2024, hearing, Defendants agreed to waive any request for sanctions if Plaintiff would sign Defendants' proposed Settlement Agreement and Full and Final Release of Claims. Plaintiff did not do so at the hearing, and apparently, she still has not done so.

3. Plaintiff be given fourteen (14) days to execute a document releasing all claims against Defendants and that Plaintiff be given fourteen (14) days thereafter to move promptly in the bankruptcy court to obtain an order approving and directing the disbursement of settlement funds; and

4. The Court hold the demand for sanctions in abeyance to allow Plaintiff a final opportunity to complete the settlement as agreed. Should she fail to comply with the Court's Order, sanctions should be imposed.

## NOTICE OF RIGHT TO OBJECT

In accordance with the rules and 28 U.S.C. § 636(b)(1), any party, within fourteen days after being served a copy of this recommendation, may serve and file written objections to the recommendations, with a copy to the District Judge, the U.S. Magistrate Judge, and the opposing party. L.U. Civ. R. 72(a)(3). The District Judge at that time may accept, reject, or modify in whole or in part, the recommendation of the Magistrate Judge, or may receive further evidence or recommit the matter to this Court with instructions. Failure to timely file written objections to proposed findings, conclusions, and recommendations contained in this report will bar an aggrieved party, except on the grounds of plain error, from attacking on appeal unobjected to proposed factual findings and legal conclusions accepted by the District Court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

This the 21st day of August, 2024.

s/Michael T. Parker<br>
United States Magistrate Judge